IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KOHN LAW FIRM, S.C., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1. Plaintiff Jose Ramirez brings this action to secure redress from unlawful collection practices engaged in by Defendant Kohn Law Firm, S.C.

2. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), through the filing of lawsuits which are (a) time-barred and (b) filed on behalf of persons who do not own the debts sued upon.

3. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

5. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

6. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

7. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

8. Filing suit on a time-barred debt violates the FDCPA. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013).

9. Filing suit on a debt which the Plaintiff does not own violates the FDCPA. *Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D. Tex. 2010); *Grant-Hall v. Cavalry Portfolio Services, LLC*, 856 F.Supp.2d 929, 942 (N.D. Ill. 2012); *Manlapaz v. Unifund CCR Partners*, 08cv6524, 2009 U.S. Dist. LEXIS 85527, *6-7, 2009 WL 3015166, *5 (N.D. Ill. Sept. 15, 2009) (suing on a debt it did not own); *Matmanivong v. Unifund CCR Partners*, 08cv6415, 2009 U.S. Dist. LEXIS 36287, *14-15, 2009 WL 1181529 *5 (N.D. Ill. April 28, 2009) (same).

## VENUE AND JURISDICTION

10. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

11. Venue and personal jurisdiction in this District are proper because:

    a. Defendant's collection communications were received by, and its collection activities impacted, Plaintiff within this District;

    b. Defendant does or transacts business within this District.

## PARTIES

12. Plaintiff is an individual who resides in Cook County.

13. Defendant Kohn Law Firm S.C. is a law firm organized as a Wisconsin corporation with principal offices at 735 N. Water St., Suite 1300, Milwaukee, WI 53202-4106.

14. Defendant Kohn Law Firm S.C. brings thousands of collection lawsuits in Illinois

courts.

15. Defendant Kohn Law Firm S.C. describes its practice as follows: "Founded in 1960 by Robert W. Kohn, the Kohn Law Firm S.C. is an award-winning and nationally recognized debt collection law firm that concentrates its practice primarily on credit card, municipal, medical and various other types of consumer debt, as well as repossession actions and insurance subrogation claims. The firm covers the entire states of Wisconsin and Illinois for its clients, which consist primarily of large national credit issuers and debt buyers, but also include local municipalities and other retail businesses and service providers." (https://www.kohnlaw.com/AboutUs.aspx)

16. Defendant Kohn Law Firm S.C. touts its automated processes: "The Kohn Law Firm utilizes Collection Master as its primary collection and litigation software, which allows for the electronic handling of virtually all phases of account collection, including lawsuit – from intake and first demand to the documentation of telephone contacts, payments and legal proceedings." (https://www.kohnlaw.com/AboutUs.aspx)

17. Defendant Kohn Law Firm S.C. uses the mails, telephone system, and internet to collect consumer debts for others.

18. Most of the business of Defendant Kohn Law Firm S.C. consists of the collection of consumer debts for others.

19. Defendant Kohn Law Firm S.C. is a debt collector as defined in the FDCPA.

## FACTS

20. On or about October 26, 2020, Kohn Law Firm, S.C., filed a collection lawsuit, purportedly on behalf of Conn Appliances Inc., against Jose Ramirez in the Circuit Court of Cook County (2020-M4-004609) to collect an alleged debt based on a retail installment contract for the purchase of goods (household furnishings) for personal, family or household purposes.

21. A copy of the complaint and exhibits are in Appendix A.

22. The complaint alleged that the transaction sued upon was a "loan."

23. In fact, it was a retail installment contract for the purchase of furniture.

24. Close examination of the "fine print" of the retail installment contract discloses that it had been assigned to Conn Credit I, LP, a Texas limited partnership.

25. Conn Credit I, LP, a Texas limited partnership, is a legal entity distinct from Conn Appliances, Inc.

26. There was no assignment from Conn Credit I, LP to anyone else.

27. Conn Appliances, Inc., therefore did not own the debt sued upon.

28. The charges for which recovery was sought in the lawsuit were more than 4 years old. A ledger attached to the complaint (also in Appendix A) stated that the last payment had been made on August 25, 2016. Since payments were monthly, the debt would have gone into default by September 2016.

29. The statute of limitations applicable to a retail installment contract for the sale of goods is four years under §2-725 of the Uniform Commercial Code.

30. Section 2-725 of the UCC provides: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . ." The Illinois citation is 810 ILCS 5/2-725.

31. Parallel §2A-506 of the UCC, applicable to leases, provides: "An action for default under a lease contract, including breach of warranty or indemnity, must be commenced within 4 years after the cause of action accrued. . . ." The Illinois citation is 810 ILCS 5/2A-506.

32. The Uniform Commercial Code statutes of limitations apply to an action to recover the money owed under a contract for the sale or lease of goods. *Massey-Ferguson Credit Corp. v. Casaulong*, 62 Cal. App. 3d 1024, 133 Cal. Rptr. 497 (1976); *Jack Heskett Lincoln-Mercury v. Metcalf,* 158 Cal. App. 3d 38; 204 Cal. Rptr. 355 (1984); *Worrel v. Farmers Bank of Delaware*, 430 A.2d 469 (Del. 1981); *Citizens National Bank of Decatur v. Farmer*, 77 Ill. App. 3d 56; 395 N.E.2d 1121 (4th Dist. 1979); *Fallimento C.Op.M.A. v. Fischer Crane Co.*, 995 F.2d 789 (7th Cir. 1993) (Illinois law); *Barnes v. Community Trust Bank,* 121 S.W.3d 520 (Ky. App.

2003); *Scott v. Ford Motor Credit Co.*, 345 Md. 251, 691 A.2d 1320 (1997); *First of Am. Bank v. Thompson*, 217 Mich. App. 581; 552 N.W.2d 516 (1996); *D.A.N. J.V. III v. Clark*, 218 S.W.2d 455 (Mo.App. 2006); *Mobile Discount Corp. v. Price*, 99 Nev. 19, 656 P.2d 851 (1983); *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858 (1966); *Ford Motor Credit Co. v. Arce*, 348 N.J.Super 198, 791 A.2d 1041 (App. Div. 2002); *First National Bank v. Chase*, 118 N.M. 783, 887 P.2d 1250 (1994); *Matter of Village of Scarsdale v New York City Water Bd.*, 33 A.D.3d 1011, 824 N.Y.S.2d 325 (2nd Dept. 2006); *Wuhu Import & Export Corp. v. Capstone Capital, LLC*, 39 A.D.3d 314; 834 N.Y.S.2d 129 (1st Dept. 2007); *Herba v. Chichester*, 301 A.D.2d 822, 823, 754 N.Y.S.2d 695 (3rd Dept. 2003); *Alice A. Baker, Inc. v. Norton*, 192 Misc. 2d 511; 747 N.Y.S.2d 146 (Sup.Ct. Rensselaer Co. 2002); *Bluefin Wear, Inc. v Tuesday's Child Boutique, Inc.,* 13766/10, 33 Misc. 3d 1233A; 2011 N.Y. Misc. LEXIS 5817; 2011 NY Slip Op 52231U (Sup.Ct. Kings Co. Dec. 14, 2011); *May Co. v. Trusnik*, 54 Ohio App.2d 71, 375 N.E.2d 72 (Ohio App. 1977); *Gimbel Bros., Inc. v. Cohen*, 46 Pa. D. & C.2d 747, 6 UCC Rep. Serv. 803 (C.P 1969); *Action Management Inc. v. Fratello*, 46 Pa. D. & C.4th 139 (C.P. 2000)*; Industrial Valley Bank v. Sharpe*, 15 Pa. D. & C.3rd 506 (C.P. 1980); *First National Bank v. Keefer*, 76 Pa. D. & C. 4th 233 (C.P. 2005); *Ideal Builders Hardware Co. v. Cross Constr. Co.*, 491 S.W.2d 228 (1972); *DaimlerChrysler Servs. N. Am., LLC v. Quimette*, 175 Vt. 316, 830 A.2d 38 (2003).

33. The claim against Jose Ramirez was barred by limitations when filed.

34. Kohn Law Firm, S.C. has previously been sued for filing lawsuits beyond the four-year UCC statute of limitations. *Williams v. Salander Enterprises, LLC, Kohn Law Firm, S.C., et al.*, 1:17cv02591 (N.D.Ill.).

35. Kohn Law Firm, S.C. therefore knew the statute of limitations applicable to the sale or lease of goods is four years.

36. The complaint filed by Kohn Law Firm, S.C. contained claims labeled "account stated" and "implied contract/ unjust enrichment" in an apparent effort to either obfuscate the statute of limitations bar or simply saturate the document with legalese beyond the

comprehension of the unsophisticated consumer. The inclusion of such claims does not affect the bar of 810 ILCS 5/2-725, *Maxfield v. Simmons*, 96 Ill. 2d 81, 86, 449 N.E.2d 110, 112 (1983) ("Section 2-725 controls in causes of action based on contract principles . . . ."). Furthermore, "unjust enrichment" is not a viable claim where there is an express contract, *Karen Stavins Enterprises, Inc. v. Community College District No. 508, County of Cook*, 2015 IL App (1st) 150356, ¶ 7, 36 N.E.3d 1015, and "[a]n account stated is merely a form of proving damages for the breach of a promise to pay on a contract," *Dreyer Medical Clinic, S.C. v. Corral*, 227 Ill.App.3d 221, 226, 591 N.E.2d 111 (2d Dist. 1992); it "cannot create original liability where none exists; it is merely a final determination of the amount of an existing debt." *Motive Parts Co. of America, Inc. v. Robinson*, 53 Ill.App.3d 935, 940, 369 N.E.2d 119 (1st Dist. 1977).

37. Most of the lawsuits Kohn Law Firm, S.C. brings are of modest amounts.

38. As a result, the persons sued cannot economically retain counsel to defend such suits, as doing so would require them to pay an amount comparable to that sought in the lawsuits.

## COUNT I – FDCPA

39. Plaintiff incorporates paragraphs 1-38.

40. Defendant Kohn Law Firm, S.C. violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 15 U.S.C. §1692f by:

    a. Filing suit on a time-barred debt;

    b. Filing suit on behalf of an entity that did not own the debt that was the subject of the lawsuit;

    c. Filing a complaint that misrepresented the nature of the debt sued upon and was obfuscatory and misleading, in an apparent effort to hide the fact that the statute of limitations had expired.

41. Section 1692e provides:

> **§ 1692e.     False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.**

> **Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)    The false representation of--**
>
> **(A)    the character, amount, or legal status of any debt; . . .**
>
> **(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

42.    Section 1692f provides:

> **§ 1692f.    Unfair practices [Section 808 of P.L.]**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant for:

i.    Statutory damages;

ii.    Actual damages;

iii.    Attorney's fees, litigation expenses and costs of suit;

iv.    Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Cathleen M. Combs (ARDC 0472840)
David Kim (ARDC 6303707)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

7

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

>   */s/ Daniel A. Edelman*
>   Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# **APPENDIX A**

Our File #I018914
4TH CIVIL M4
STATE OF ILLINOIS MUNICIPAL DISTRICT COOK COUNTY

CONN APPLIANCES INC
2445 TECHNOLOGY FOREST
THE WOODLANDS, TX 77381

    Plaintiff,
vs.

JOSE RAMIREZ

    Defendant.

FILED
10/26/2020 9:14 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

COMPLAINT
Case No. 20204004609

Now comes the plaintiff, by the Kohn Law Firm S.C., plaintiff's attorneys, and for a cause of action against the defendant herein alleges as follows:

1. The plaintiff in this action is:

CONN APPLIANCES INC
2445 TECHNOLOGY FOREST
THE WOODLANDS, TX 77381

2. Upon information and belief, the defendant is:

JOSE RAMIREZ

3. The plaintiff and defendant entered into a loan agreement identified as Account # *****0134, and the plaintiff lent money to the defendant pursuant to the terms of said agreement. Attached hereto and incorporated herein by reference are documents supporting the plaintiff's claim.

### FIRST CAUSE OF ACTION - BREACH OF CONTRACT

4. The plaintiff realleges and incorporates paragraphs 1 through 3 above.

5. The agreement provided for a monetary loan at specific terms and/or rates.

6. The defendant agreed to and has failed to pay the plaintiff pursuant to the terms of the agreement.

### SECOND CAUSE OF ACTION - ACCOUNT STATED

7. The plaintiff realleges and incorporates paragraphs 1 through 3 above.

8. Statements were provided to the defendant evidencing the loan account activity.

9. The defendant retained the statements without making written objections thereto.

10. The defendant has failed to pay the amount set forth on the statements and there remains a balance due.

## THIRD CAUSE OF ACTION - IMPLIED CONTRACT/UNJUST ENRICHMENT

11. The plaintiff realleges and incorporates paragraphs 1 through 3 above.

12. The original creditor conferred a benefit upon the defendant by loaning money to the defendant.

13. The defendant was unjustly enriched by retaining the benefit of the loan from the plaintiff without paying for same.

## DAMAGES

14. The plaintiff is seeking to recover from the defendant the amount set forth below:

| | |
|---|---|
| Principal, interest and fees through date of attached statement or account summary: | $3,135.27 |
| Late fees from the date of attached statement or account summary to October 19, 2020: | $.00 |
| Interest from the date of attached statement or account summary to October 19, 2020: | $.00 |
| Payments received from the date of attached statement or account summary to October 19, 2020: | $.00 |
| TOTAL: | $3,135.27 |

WHEREFORE, the plaintiff demands judgment against the defendant in the amount of $3,135.27, as well as the costs of this action, and any other relief this court deems just and equitable.

NOTICE: This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

## VERIFICATION

Under the penalties of perjury as provided by the law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

Dated this October 19, 2020.

Electronically Signed By:

KOHN LAW FIRM S.C.
/s/ MICHAEL HANTSCH
MICHAEL HANTSCH
Attorney for Plaintiff
ARDC 6303465

Attorney Michael Hantsch
Cook #39472
ARDC 6303465
Kohn Law Firm S.C.
Attorney for CONN APPLIANCES INC
735 N. Water St., Suite 1300
Milwaukee, WI 53202-4106
(414) 276-0435
MichaelH@Kohnlaw.com

FILED DATE: 10/26/2020 9:14 AM 2020A...

**RETAIL INSTALLMENT CONTRACT**

SELLER, FIRST BENEFICIARY, AND NAMED ASSURED

TX

TO CONTACT CONN'S CUSTOMER SERVICE HELPDESK CALL 1-877-358-1252

EFFECTIVE DATE OF INSURANCE

Date 01/09/2016  0 Odd Days

CONN APPLIANCES, INC.
724 E EXPRESSWAY HWY
MCALLEN
TEXAS    78501
956/682-4222

Acct. No. APPROVED APP
Salesman CASTRO, JOSE
Invoice No. 041-028582902/001

Full Name of Proposed Insured (Purchaser): RAMIREZ, JOSE
Age: 24

FILED DATE: 10/26/2020 9:14 AM  2020040045

| Quan. | Lot No. | Factory No. | Color or Size | ARTICLES | PRICE |
|---|---|---|---|---|---|
| 1 | | 8951540 | | | |
| 1 | | 8951541 | | SOUTH HAMPTON WW KG | 525.00 |
| | | | | 036 MO. FURNITUREGARD PLAN | 119.00 |
| 1 | | 8951560 | | SOUTH HAMPTON WW KG | 475.00 |
| | | | | 036 MO. FURNITUREGARD PLAN | 119.00 |
| 1 | | 8951351 | | SOUTH HAMPTON WW KG | 125.00 |
| | | | | 036 MO. FURNITUREGARD PLAN | 39.00 |
| 1 | | 8951422 | | SOUTH HAMPTON WW DR | 924.99 |
| | | | | 036 MO. FURNITUREGARD PLAN | 199.00 |
| 1 | | DELIVERY | | SOUTH HAMPTON WW MI | 250.00 |
| | | | | 036 MO. FURNITUREGARD PLAN | 69.00 |
| | | | | STANDARD DELIVERY C | |

*CASH OPTION EXPIRES 01/09/2017; SEE ADDENDUM FOR DETAILS*

TOTAL: 2844.99
SALES TAX: 234.72

**TRUTH-IN-LENDING DISCLOSURE STATEMENT**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 20.88% | $1110.79 | $3436.41 | $4547.20 | $4547.20 |

Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 32 | 142.10 | FEB. 23, 2016 same day each month |

| TYPE | PREMIUM |
|---|---|
| CREDIT LIFE | 37.42 |
| CREDIT LIFE AND | |
| CREDIT DISABILITY | NONE |
| CREDIT INVOLUNTARY UNEMPLOYMENT (Buyer Only) | NONE |

**ITEMIZATION OF AMOUNT FINANCED**

1. CASH PRICE (Including Sales Tax): $3079.71
   a. CASH DOWN PAYMENT
   b. TRADE IN
2. TOTAL DOWN PAYMENT (a + b)
3. UNPAID BALANCE OF CASH PRICE (1-2): $3079.71
   .00
   FINANCE CHARGE REFUND
   SURCHARGE REFUND
   TOTAL FINANCE CHARGE REFUND
   CREDIT LIFE INS. REFUND
   CREDIT DISABILITY INSURANCE REFUND
   PROPERTY INS. REFUND
   CREDIT INVOLUNTARY UNEMPLOYMENT INS. REFUND
4. NET BALANCE - PRIOR CONTRACT

SUB TOTAL: $3079.71

ALL INSURANCE CHARGES PAID TO INSURANCE COMPANIES
c. OTHER CHARGES PAID TO
d. CREDIT LIFE INSURANCE: 37.42
e. CREDIT DISABILITY INSURANCE: NONE
f. CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE: NONE
g. PROPERTY INSURANCE: 319.28
h. FEES PAID TO PUBLIC OFFICIALS

5. (c+d+e+f+g+h) TOTAL OTHER CHARGES: $356.70

6. AMOUNT FINANCED (3+4+5): $3436.41

FINANCE CHARGE: $1110.79

as collateral to Bank of America, N.A.

TOTAL OF PAYMENTS: $4547.20

Property Coverage Purchased $ 2489.74

Date: 01/09/2016    CONN'S
By Authorized Representative: CASTRO, JOSE

## ADDITIONAL DISCLOSURES AND CONTRACT TERMS

**PROMISE TO PAY:** This contract covers the installment purchase of the property and/or services described on the front of this contract. Purchaser promises to pay Seller the Total of Payments shown on the front of this contract in consecutive monthly installments as indicated in the Payment Schedule. Payments received will be applied first to any deferral charge or late payment charge then due, and thereafter to the unpaid balance of the Total of Payments. Any amounts remaining unpaid on the final payment due date will be due in full on that date.

**SECURITY INTEREST:** The Seller retains and the Purchasers grants a purchase money security interest under the Texas Business and Commercial Code in each of the goods described on the reverse side hereof and in each item of goods described under the Prior Contracts detailed on the front of this contract, such Prior Contracts are incorporated by reference as if copied herein verbatim (collectively, the "Property") until the purchase price of such item of Property shall have been paid in full. Each payment on this agreement shall be allocated to all the various purchase obligations in the same ratio that the original cash sales price of each item bears to the total cash sales price of all such items. However, if the Property includes property purchased under a prior contract and the installment payments due under this Agreement are greater than the payments due under that prior contract, the Seller may allocate to the prior purchases an amount from each installment equal to a payment due under the prior contract, the remainder of each installment being allocated to the latest purchase. The amount of any down payment on the latest purchase shall be allocated in its entirety to such purchase. Purchaser also grants to Seller a security interest in the proceeds from any unauthorized sale of the property and the proceeds of any insurance requested by Purchaser in this contract. Purchaser will not transfer, abandon, sell, assign, lease or encumber the Property without the Seller's written consent.

**ARBITRATION:** You agree that any claim, dispute or controversy arising from or relating to this Agreement, including, but not limited to, disputes relating to any documentation governing your obligations under this Agreement, any claim, dispute, or controversy alleging fraud, misrepresentation, or other claim, whether under common law, equity, or pursuant to federal, state, or local statute or regulation, any dispute relating to collection activities taken by Conn's, our affiliates, subsidiaries, agents, officers, employees, servicers, directors, or assigns regarding monies owed under this Agreement, or the scope and validity of this arbitration clause (including disputes as to the matters subject to arbitration), or the enforcement or interpretation of any other provision of this Agreement, shall be resolved by binding individual (and not class) arbitration by and under the administration of: (1) the National Arbitration Forum ("NAF") in accordance with its Code of Procedure in effect at the time the claim is filed, (2) the American Arbitration Association ("AAA") in accordance with its Arbitration Rules in effect at the time the claim is filed, or (3) if for any reason either the NAF or the AAA is unable or unwilling or ceases to serve as an administrator of the arbitration, or in any event by agreement of the parties, the parties agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association, and who is experienced in consumer finance and debt collection, to arbitrate the dispute consistent with the requirements of this Agreement and pursuant to such arbitrator's rules. The claim or dispute will be arbitrated by a single arbitrator on an individual basis and not as a class action. You and we are waiving the right or opportunity to litigate disputes in a court of law. Any arbitration hearing that is held will take place at a location convenient to your residence. This arbitration clause is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16), and not by any state law that might otherwise apply. Judgment upon the award may be entered in any court having jurisdiction.

You understand that under this arbitration clause, you expressly waive your right to participate as a class representative or class member on any class action claim you may have against us, our affiliates, subsidiaries, employees, officers, directors, agents, servicers, or assigns, including any right to class arbitration or any consolidation of individual arbitrations. This agreement does not constitute a waiver of any of your rights and remedies to pursue a claim individually (and not as a class action) in binding arbitration as provided above.

This arbitration clause does not apply to any legal remedies that may be pursued to collect monies owed under the Agreement. This arbitration clause is an independent agreement and shall survive the termination, payoff or transfer of this Agreement. If any part of this arbitration clause is found by a court to be unenforceable for any reason, the remainder of this clause shall remain enforceable.

**LATE PAYMENT CHARGE:** If a payment is not paid in full within 10 days after the scheduled due date, you will be charged either (a) 5% of the payment or $5, whichever is less, or (b) interest after maturity on each installment not to exceed the highest lawful contract rate under state law.

**RETURNED PAYMENT CHARGE:** If you make a payment that is not honored by your financial institution, we may charge you a returned payment processing fee of $30.00.

**PREPAYMENT, RENEWAL, AND REFINANCING:** Purchaser may pay this debt in full before the final scheduled payment date without penalty. Upon prepayment in full, Purchaser shall receive refund or credit of the unearned portion of the original Finance Charge determined under the Sum of Balances method, to be computed after first deducting from the original Finance Charge a minimum payment of $6.00 if the amount financed is $25.00 or less, $9.00 if the amount financed is between $25.00 and $75.00, and $12.00 if the amount financed is $75.00 or more. No refund or credit of less than $1.00 will be made. In addition, upon prepayment in full, Purchaser shall receive refund or credit of the unearned portion of any insurance premium charged to Purchaser under this contract. No refund or credit of less than $1.00 will be made. If this debt is renewed or refinanced, Purchaser shall receive refund or credit of the unearned portions of the original Finance Charge and insurance premiums as provided above, and Purchaser will be charged a refinancing charge as provided under Texas law.

**DEFERRAL CHARGE:** The Seller may agree to defer the scheduled due date of all or any part of an installment, and may collect a deferral charge at a rate of fifteen cents for each ten dollars per month deferred, provided that a minimum charge of $1.00 may be collected.

**ACCELERATION UPON DEFAULT:** Purchaser shall be in default hereunder if: Purchaser fails to pay any scheduled installment when due; Purchasers fails to perform any other obligations hereunder; or Seller reasonably believes that the prospect of payment or performance is impaired. If Purchaser is in default, Seller may, at its option, without notice or demand, declare immediately due and payable the entire unpaid balance of the contract less any credits or refunds of unearned Finance Charge or insurance premiums as described above under the paragraph entitled "Prepayment, Renewal and Refinancing". Purchaser also waives the right to receive notice of the seller's intent to accelerate the debt.

**ACCOUNT CHARGE-OFF:** In the event Purchaser defaults on this Agreement which results in subsequent charge off of the account by the owner of this account, the said account owner may, at its option, without notice or demand, cancel any existing insurance policies or repair service agreements. In the event of insurance policy or repair service agreement cancellation, no refund of any amounts paid by Purchaser for any such policy or agreement will be due to Purchaser. Refunds will be applied to the balance of the defaulted account. If at any time the Purchaser elects to cancel the insurance policy or repair service agreement, all refunds due under the policy will be credited to the account.

**COMPLETE AGREEMENT:** This contract shall constitute the entire agreement between the parties and no oral agreement or modification of its terms shall be valid or binding.

**MISCELLANEOUS:** Purchaser states that there is not other extension of credit from any source in connection with the Property. Purchaser agrees that if Seller fails to exercise any of its rights upon default, it shall not be considered as a waiver of any of Seller's rights upon any subsequent defaults. Any part of this contract contrary to the law of this state shall not invalidate other parts of this contract. This contract shall be governed by the laws of the State of Texas, except as may be preempted by federal law.

The goods are bought for use primarily for personal, family, or household purposes and will be kept at the residence of the Purchaser(s) state herein. Purchaser grants to the Seller all those rights, privileges and protections provided for secured parties under the Uniform Commercial Code of the state in which the transaction takes place, and waives all rights of exemption. Purchaser promises to pay reasonable attorney's fees in the enforcement hereof after default and referral to an attorney not a salaried employee of the Seller, including fees for appellate litigation and all court costs incurred by the Seller. There are NO WARRANTIES, express or implied, including the implied warranties of MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE, with respect to the goods sold, except as to title.

ALL GOODS PURCHASED PURSUANT TO THIS SALES INVOICE ARE PURCHASED WITHOUT EXPRESS OR IMPLIED WARRANTIES FROM SELLER AND SELLER DISCLAIMS ANY AND ALL WARRANTIES, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY. In no event shall Seller have any liability for consequential damages from the use of any defect in goods purchased hereunder.

"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

For all Property returns or exchanges that occur within the applicable time period outlined in Conn's Return & Exchange Policy as of the date of this Agreement, Purchaser agrees to pay the restocking fee outlined in that policy. If not paid at the time of a return, the restocking fee will be deducted from the down payment disclosed on the front of this Agreement, if any. Any down payment remaining after such deduction will be refunded to Purchaser; however, should the restocking fee exceed the down payment or if no down payment was made, Purchaser agrees to pay the amount of the restocking fee not paid immediately upon return of the Property. Seller may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

To contact Seller about this account call 1-800-280-1514. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, TX 78705-4207. Phone (512)936-7600 or (800)538-1579. Contact the commissioner relative to any inquiries or complaints.

You certify that you are the subscriber and/or customary user of the telephone number(s) (including, without limitation, wireless number(s)) provided by you to us or our affiliates acting on our behalf. You hereby consent to receive autodialed and/or pre-recorded message calls and SMS messages (including text messages) from us, our affiliates, marketing partners, agents and others calling on our behalf at any telephone numbers that you have provided, including calls related to informational, debt collection, or any other Conn's business purpose. You also hereby consent to receive any such calls and messages to any telephone number that you may provide in the future (including wireless telephone numbers). During the term of this agreement, you also agree to notify Conn's if any telephone number for which you have provided consent is (i) is relinquished by you, or (ii) changed by you. Nothing in this agreement shall designate an exclusive manner for revoking your consent to receive calls at a particular wireless telephone number, or condition your purchase of good or services from Conn's on your consent to receive debt collection, or other calls from or on behalf of Conn's.

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned, being the Seller named on the reverse hereof, hereby sells, assigns and transfers to Conn Credit I, LP a Texas Limited Partnership (a) all of its rights, title and interest in and to the within instrument(s), (b) all of its right, title and interest in and to the indebtedness evidenced thereby or payable thereunder, and (c) all of its right, title and interest in and to all security interests provided therein, including all of its right, title and interest in and to the property, if any, giving rise to any thereof; together with all moneys now and hereafter due and or to become due thereon.

The undersigned warrants that the accompanying statement signed by the Purchaser named on the reverse hereof is accurate, complete and up-to-date in all material respects.

SOLD, ASSIGNED, AND TRANSFERRED TO
CONN CREDIT I, LP by CONN APPLIANCES, INC., dba CONN'S

*M. John*

Authorized Signature of Conn Appliances, Inc.
3295 College Street
Beaumont, Texas 77701

Ledger

## Loan Ledger

269 Conn's  7589  07:20:02  7-24-2019  [Log Call]

### Customer Information

Name/Address: Jose*Ramirez

Home Telephone Number
Business Telephone Number
Employer

**Customer Number**
**Account Number** ...0134

### Terms of Loan

| | |
|---|---:|
| Status Code | CHARGE OFF |
| Original Loan Amount | 4,547.20 |
| Interest Rate | 20.88000% |
| Regular Payment Amount | 142.10 |
| Loan Date | 01-09-2016 |
| Maturity Date | 09-23-2018 |
| Dealer Number | 2400 |
| Loan Term | 32 Months |
| Total Number of Payments | 32 |
| Collateral 1 | 041/028582902/IY |
| | 3079.71 $CR |
| Collateral 2 | |
| Number of Extensions | 00 |
| Number of Payments Made | 7 |
| Net Payoff | 3,135.27 |
| Partial/Future Payment | .00 |
| Partial Interest | .00 |
| Partial Escrow | .00 |
| Collected Late Charges | 35.00 |
| Uncollected Late Charges | .00 |
| Next Due Date | 09-23-2016 |
| Total Past Due | 3,135.27 |
| Loss Reserve Percent | .000 |

### Past Due Information

| | |
|---|---:|
| No. of 1st Past Due Notices | 1 |
| No. of 2nd Past Due Notices | 1 |
| No. of 3rd Past Due Notices | 0 |
| No. of Collection Notices | 00 |
| Delinquent over 30 Days | 1 |
| Delinquent over 60 Days | 1 |
| Delinquent over 90 Days | 1 |

| Actual Date | Effective Date | Tran Code | Description | Applied Principal | Applied Interest | Applied Other | Principal Balance |
|---|---|---|---|---:|---:|---:|---:|
| 01-12-2016 | 01-09-2016 | 702-4 | New loan debit | 4,547.20 | .00 | .00 | 4,547.20 |
| 02-19-2016 | 02-19-2016 | 725-5 | Regular Payment | 150.00 | .00 | .00 | 4,397.20 |
| 03-16-2016 | 03-16-2016 | 725-5 | Regular Payment | 143.00 | .00 | .00 | 4,254.20 |
| 04-14-2016 | 04-14-2016 | 725-5 | Regular Payment | 142.10 | .00 | .00 | 4,112.10 |
| 05-12-2016 | 05-12-2016 | 725-5 | Regular Payment | 142.10 | .00 | .00 | 3,970.00 |
| 06-24-2016 | 06-24-2016 | 725-5 | Regular Payment | 142.10 | .00 | .00 | 3,827.90 |
| 07-28-2016 | 07-28-2016 | 725-5 | Regular Payment | 133.30 | .00 | .00 | 3,694.60 |
| 08-25-2016 | 08-25-2016 | 725-5 | Regular Payment | 142.10 | .00 | .00 | 3,552.50 |
| 10-03-2016 | 10-03-2016 | 764-6 | Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| 11-02-2016 | 11-02-2016 | 764-6 | Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| 12-03-2016 | 12-03-2016 | 764-6 | Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| | | 764-6 | Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |

FILED DATE: 10/26/2020 9:14 AM  2020400-

http://10.106.160.194:6180/C4X?LC;449070134;F\

7/24/2019

Ledger

Page 2 of 2

| | | | | | | |
|---|---|---|---|---|---|---|
| 01-02-2017 | 01-02-2017 | 764-6 Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| 02-02-2017 | 02-02-2017 | 764-6 Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| 03-05-2017 | 03-05-2017 | 764-6 Late charge assessment | .00 | .00 | 5.00 | 3,552.50 |
| 04-02-2017 | 04-02-2017 | 738-2 Collect late charge | .00 | .00 | 5.00 | 3,552.50 |
| 04-30-2017 | 04-30-2017 | 750-5 Mandatory Chgoff | .00 | .00 | 35.00 | 3,552.50 |
| 04-30-2017 | 04-30-2017 | 709-5 Bank Rebate | 3,100.27 | .00 | .00 | 452.23 |
| 04-30-2017 | 00-00-0000 | 709-5 Life Ins. Rebate | 283.02 | .00 | .00 | 169.21 |
| 04-30-2017 | 00-00-0000 | 709-5 Dealer Rebate | 9.57 | .00 | .00 | 159.64 |
| | | | 159.64 | .00 | .00 | .00 |

FILED DATE: 10/26/2020 9:14 AM 2020L004603

http://10.106.160.194:6180/C4X?LC;449070134;F\

7/24/2019